IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs September 7, 2016

**CHRISTOPHER D. HODGE v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Lauderdale County**
**No. 7359     Joe H. Walker, III, Judge**
_____

**No. W2016-00892-CCA-R3-PC  -  Filed February 23, 2017**
_____

The Petitioner, Christopher D. Hodge, appeals the Lauderdale County Circuit Court's summary dismissal of his petition requesting DNA analysis of evidence pursuant to the Post-Conviction DNA Analysis Act of 2001. Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and D. KELLY THOMAS, JR., JJ., joined.

Christopher D. Hodge, Pro se, Clifton, Tennessee.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Counsel; D. Michael Dunavant, District Attorney General; and Julie K. Pillow, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

In May 2002, the Petitioner and Ricky Ardd were prisoners at West Tennessee State Penitentiary. See State v. Christopher David Hodge, No. W2003-01513-CCA-R3-CD, 2004 WL 2290495, at *1 (Tenn. Crim. App. at Jackson, Oct. 11, 2004), perm. to appeal denied, (Tenn. Feb. 28, 2005). On May 27, Ardd was transferred to cell 24 in Unit 2 with the Petitioner as his cellmate, and they were the only two men in the cell. Id. at *2. A correctional officer checked on their cell about 5:45 p.m. and did not see a problem. Id. However, when she returned about 6:00 p.m., the Petitioner called out to her that Ardd was unconscious. Id. A prison nurse went to the cell and found that Ardd

did not have a pulse.  Id. at *2.  The Petitioner was indicted for second degree murder. Id. at *1.

At trial, Dr. O.C. Smith, the Shelby County Medical Examiner, testified as follows regarding the victim's autopsy:

> [T]he victim was five feet, six inches tall and weighed 145 pounds.  Dr. Smith concluded that the victim died of strangulation.  He stated that the victim's neck was scraped and bruised by a ligature.  The victim had bled into the muscles of his neck, as well as into the eyeball covering of both eyes.  Dr. Smith also noted contusions and abrasions on the back of the neck, contusions of the tongue, and four superficial, non-fatal puncture wounds on the victim's back. He stated that the injuries suffered by the victim, specifically the bleeding into tissues, indicated that the victim did not die an instantaneous death.  He stated that the victim did not die of manual strangulation but by the application of a ligature which left marks on the victim's neck.  Dr. Smith was shown a long strip of torn bed sheeting attached to a plastic fork that was later introduced as an item seized from cell 24.  Dr. Smith opined that the victim's injuries were consistent with strangulation by means of such an instrument.  He said that he could not determine the time of death from the autopsy results.  He explained that it takes approximately ninety seconds of oxygen deprivation to cause unconsciousness and four minutes of oxygen deprivation to cause death to the brain.
>
> On cross-examination, Dr. Smith admitted that he could not say for certain that the ligature presented caused the victim's death.  He also agreed that a sleeper hold can induce unconsciousness in approximately fifteen seconds.  On redirect examination, Dr. Smith stated that the victim would be expected to again start breathing if only made unconscious by means of a sleeper hold of fifteen seconds duration.

Id. at *1-2.

The Petitioner testified at trial that he was six feet, six inches tall, that the strip of bedding was in the cell when he moved there, and that it was used to suspend a sheet for

restroom privacy. Id. at 3. He stated that after the victim was moved into his cell, the victim was "standing, ranting, and using obscenities." Id. The Petitioner asked the victim to be quiet, and the victim spat on his face and tackled him. Id. The Petitioner stated that he put the victim in a sleeper hold and onto the floor four times and that he released the victim each time. Id. However, the victim kept getting up and attacking him. Id. The Petitioner said that he repeatedly tried to call out to prison guards but that the noise level was too high for guards to hear him, that he did not know the sleeper hold would kill the victim, and that he was just trying to render the victim unconscious. Id. He was not injured from the victim's attacks. Id. The Control Room Officer for Unit 2 testified that the noise level was "'pretty quiet'" about 6:00 p.m. and that an emergency call button in cell 24 was never activated. Id. The jury convicted the Petitioner as charged, and the trial court sentenced him as a multiple offender to thirty-five years to be served at 100%. Id. at *1.

On direct appeal of his convictions to this court, the Petitioner argued that the evidence was insufficient to support the conviction. Id. In finding the evidence sufficient, this court stated as follows:

> The undisputed medical evidence in this case attributed the death of the victim to strangulation by means of a ligature. An instrument suitable for a ligature was found in the cell where the victim died. Dr. Smith stated that the victim's injuries were consistent with the use of such an instrument, though he could not say to a medical certainty that this was the ligature used in the victim's homicide. Only the defendant could have been responsible for the victim's death. The jury could, and did, reject the defendant's version of self-defense and embraced the prosecution's theory that the defendant knowingly killed the victim. We hold that the evidence is sufficient to justify a rational jury to find beyond a reasonable doubt that the defendant knowingly killed the victim.

Id. at *4.

The Petitioner filed a timely petition for post-conviction relief, alleging in part that he received the ineffective assistance of counsel because trial counsel failed to obtain independent forensic testing of the alleged murder weapon. Christopher Hodge v. State, No. W2005-01588-CCA-R3-PC, 2006 WL 1381647, at *2 (Tenn. Crim. App. at Jackson, May 19, 2006), perm. to appeal denied, (Tenn. Oct. 2, 2006). At the post-conviction evidentiary hearing, trial counsel testified that she did not seek independent forensic

testing of the strip of bedding because she did not know before trial that Dr. Smith was going to identify it as the possible murder weapon. Id. at *3. This court stated that counsel provided a "reasonable explanation[]" for not obtaining independent forensic testing of the evidence and ruled that the post-conviction court properly denied the petition for post-conviction relief. Id. at *6.

On December 22, 2015, the Petitioner filed a petition for DNA testing of the strip of bedding with the attached plastic fork pursuant to Tennessee Code Annotated section 40-30-304 or section 40-30-305. The State responded, arguing that the Petitioner was not entitled to testing because Dr. Smith did not say with certainty that the strip of bedding was the murder weapon and because testing would not prove the Petitioner's innocence in that it would either incriminate him or simply exclude the bedding strip as the murder weapon.

On April 7, 2016, the post-conviction court filed a written order denying the request for DNA analysis. In the order, the post-conviction court recounted the evidence presented by this court in its direct appeal opinion affirming the Petitioner's conviction. The court then wrote as follows:

> Before a convicted defendant is entitled to request DNA testing, Tenn. Code Ann. § 40-30-304(1) requires that a reasonable probability exists that the petitioner would not have been prosecuted or convicted if exculpatory results had been obtained through DNA analysis.
>
> A DNA testing of the sheet would not be conclusive of any issue.
>
> The request for DNA testing is denied.

## II. Analysis

On appeal, the Petitioner claims that the post-conviction court erred by denying his request for DNA analysis because "if no DNA of the petitioner or the victim is on the ligature, then it could not provide a basis for petitioner's second degree murder [conviction]." The State contends that the post-conviction court properly denied the Petitioner's request. We agree with the State.

The Post-Conviction DNA Analysis Act of 2001 provides, in pertinent part, that

a person convicted of and sentenced for the commission of . . . second degree murder . . . may at any time, file a petition requesting the forensic DNA analysis of any evidence that is in the possession or control of the prosecution, law enforcement, laboratory, or court, and that is related to the investigation or prosecution that resulted in the judgment of conviction and that may contain biological evidence.

Tenn. Code Ann. § 40-30-303. A post-conviction court <u>must</u> order DNA analysis when the petitioner has satisfied each of the following conditions:

(1) A reasonable probability exists that the petitioner would not have been prosecuted or convicted if exculpatory results had been obtained through DNA analysis;

(2) The evidence is still in existence and in such a condition that DNA analysis may be conducted;

(3) The evidence was never previously subjected to DNA analysis or was not subjected to the analysis that is now requested which could resolve an issue not resolved by previous analysis; and

(4) The application for analysis is made for the purpose of demonstrating innocence and not to unreasonably delay the execution of sentence or administration of justice.

Tenn. Code Ann. § 40-30-304. In addition, the post-conviction court <u>may</u> order DNA analysis if "[a] reasonable probability exists that analysis of the evidence will produce DNA results that would have rendered the petitioner's verdict or sentence more favorable if the results had been available at the proceeding leading to the judgment of conviction," and the Petitioner satisfies conditions two through four above. Tenn. Code Ann. § 40-35-305.

In conducting its analysis of a petitioner's claim, a post-conviction court must presume that the DNA analysis would produce "'favorable'" results to the petitioner. <u>Powers v. State</u>, 343 S.W.3d 36, 55 & n.28 (Tenn. 2011); <u>see</u> Tenn. Code Ann. § 40-30-305(1). Moreover, the court may consider this court's opinions on the petitioner's direct appeal of his convictions and his appeals of prior post-conviction actions. <u>Id.</u> (citation omitted). A hearing is only required if the results of DNA analysis are favorable to the petitioner. Tenn. Code Ann. § 40-35-312. We afford the post-conviction court

considerable discretion in determining whether to grant a petitioner relief under the Act, and the scope of our review is limited. See Sedley Alley v. State, No. W2004-01204-CCA-R3-PD, 2004 WL 1196095, at *3 (Tenn. Crim. App. at Jackson, May 26, 2004).

Turning to the instant case, the post-conviction court held that DNA analysis was not required under the mandatory provision of the Act. Although the court did not address DNA analysis under the discretionary provision, we conclude that the Petitioner would not be entitled to relief under either provision.

The issue at trial was not whether the Petitioner killed the victim but whether he did so knowingly or in self-defense. The Petitioner failed to explain in his petition and has failed to explain on appeal how a lack of DNA on the ligature at issue would be favorable. Presumably, a lack of DNA on the ligature would support his claim that he strangled the victim manually with a sleeper hold in an attempt merely to render the victim unconscious. However, because he is not claiming actual innocence or the existence of another perpetrator, DNA analysis is not required under Tennessee Code Annotated section 40-30-304. See Thomas Edward Kotewa v. State, No. E2011-02527-CCA-R3-PC, 2012 WL 5309563, at *5 (Tenn. Crim. App. at Knoxville, Oct. 26, 2012).

The less-stringent standard of Tennessee Code Annotated section 40-30-305 requires only that the DNA analysis would have rendered the Petitioner's verdict or sentence more favorable. Tenn. Code Ann. § 40-30-305(1). As this court stated in its direct appeal opinion of the Petitioner's conviction, "The undisputed medical evidence in this case attributed the death of the victim to strangulation by means of a ligature." Moreover, Dr. Smith testified that although the victim's injuries were consistent with the strip of bedding at issue, he could not say definitively that it was the ligature that caused the victim's death. Finally, even if a lack of DNA on the strip of bedding supports the Petitioner's claim that he manually strangled the victim, Dr. Smith acknowledged that it could have taken the Petitioner just fifteen seconds to render the victim unconscious with a sleeper hold but testified that he would have had to have restricted the victim's oxygen supply for at least four minutes to cause death. Therefore, we conclude that DNA analysis would not establish a reasonable probability that the Petitioner's verdict or sentence would have been more favorable if the results had been available at trial.

### III. Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

_____
NORMA MCGEE OGLE, JUDGE

- 6 -